DAVID B. GOLUBCHIK (SBN 185520)
ANTHONY A. FRIEDMAN (SBN 201955)
JOHN-PATRICK M. FRITZ (SBN 245240)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, CA 90034
Telephone: (310) 229-1234
Fax: (310) 229-1244
Email: dbg@lnbyg.com, aaf@lnbyg.com, jpf@lnbyg.com

Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>WORKSITE LABS, INC.,<br><br>    Debtor and Debtor in Possession. | Case No.: 2:23-bk-14539-VZ<br><br>Chapter 11 Case<br><br>[Subchapter V]<br><br>**DEBTOR'S OMNIBUS STATEMENT OF FACTS IN SUPPORT OF "FIRST DAY MOTIONS"**<br><br>Hearing:<br>DATE:    July 27, 2023<br>TIME:    11:00 a.m.<br>PLACE:   Courtroom 1368<br>         255 East Temple Street<br>         Los Angeles, CA 90012 |

1

Worksite Labs ("WSL" or "Debtor"), debtor and debtor in possession herein, hereby files this Omnibus Statement of Facts in support of the following "First Day Motions":

1. Emergency Motion For Entry Of An Order: (I) Authorizing The Continued Use Of Certain Portions Of Its Cash Management System; (II) Authorizing The Maintenance Of Pre-Petition Bank Accounts; and (III) Authorizing And Instructing Banks To Release Administrative Holds And/Or Freezes On The Debtor's Pre-Petition Accounts;

2. Emergency Motion For An Order: (1) Authorizing Debtor To (A) Obtain Postpetition Financing Pursuant To 11 U.S.C. § 364 and (B) Utilize Cash Collateral Of Prepetition Secured Entities Pursuant To 11 U.S.C. § 363; (2) Scheduling A Final Hearing; And (3) Granting Related Relief; and

3. Emergency Motion For Entry Of An Order Authorizing Debtor To Honor And/Or Pay Pre-Petition Wages, Salaries, Commissions, And Vacation, Leave And Other Benefits, And Reimbursable Expenses; And Honor And/Or Pay Related Payroll Taxes And Workers' Compensation Insurance Costs

**STATEMENT OF FACTS**

**A.    Background.**

1. WSL is a Delaware corporation. WSL commenced this case by filing a voluntary petition under Chapter 11 of 11 U.S.C. ("Bankruptcy Code") on July 20, 2023. WSL has elected to proceed under the Subchapter election. WSL is managing its affairs as a debtor in possession.

2. WSL commenced operations in May 2020 as a decentralized, portable, scalable solution to testing labs that was able to provide results in 24 hours or less. WSL was born out of the inability of the traditional health care system to keep up with the demand for timely results for COVID testing, resulting in people waiting days and weeks for test results, which delayed treatment and increased inefficiencies in the healthcare industry. WSL's rapid turnaround was crucial to the travel and tourism industry during the COVID period as WSL provided services at

major airports in the US, the LA County Jails and various schools and community centers. WSL also saw a need to bring testing to underserved communities. As a result, WSL established collection sites with faith based and non-profit organizations in South Los Angeles, Brooklyn and the San Francisco Peninsula.

3. WSL currently operates testing centers in California, New York, Nevada and Guam. WSL also operates out of its corporate offices in Long Beach.

4. Since its inception in 2020, WSL has achieved substantial milestones:

- WSL filled a major COVID-19 testing gap, creating vital access to care during a critical moment in the country's history;
- WSL helped keep the $1 trillion-plus international tourism industry afloat with one-to-one travel testing services;
- WSL supported public and private organizations – including schools, airports and airlines – with optimized, scalable testing solutions;
- WSL served vulnerable populations with comprehensive health services at our community sites; and
- WSL sent a fully equipped laboratory to Ukraine to provide services for civilians and troops.

5. As the world was coming out of the COVID crisis, WSL utilized its experience to expand and enhance its range of services. Specifically, WSL has been transitioning from COVID testing to Post-Pandemic general medical diagnostic services through its earnings generated by the COVID testing

6. In order to complete its transition to enhanced and expanded services for its communities, WSL was in the process of obtaining additional financing necessary to achieve its target goals.

7. During this process, which was shortly prior to the Petition Date, WSL noticed that the reporting from its third party billing company (Medical Practice partners, LLC ("MMP") was not reconciling to its accounts receivable reporting. Collections from insurance billings

3

were falling rapidly without any explanation from the billing company.  In July 2023, WSL learned, for the first time, that although it was generating accounts receivable which were being regularly forwarded to MMP for processing and collection, for some unexplained reason, MMP failed to process close to $4 million in such receivables.  Although an explanation and supporting documents were requested, to date, no such information or explanations were provided to WSL.  WSL is investigating its claims against MMP and, upon commencement of this case, sent a "Litigation Hold" letter to MMP.  WSL is transitioning to billing in-house.

8. Mountain Ridge Capital, as the primary lender, provided financing based on receivables being less than 120 days old.  As a result of MMP's failures, in addition to reduction in cash on hand, many of the receivables became stale for financing purposes (not stale for collection purposes).  Between the reduction in the collateral base for advances from Mountain Ridge and Mountain Ridge's daily sweeps of WSL's accounts, WSL faced a cash flow crunch which impaired its ability to fund operations, including payroll.  Additional funding was necessary pending collection of the accounts receivable that were not processed by the billing company.  Based on the foregoing challenges, WSL determined that the filing of this case was necessary and proper.

B.   **Assets and Liabilities.**

9. By far, WSL's most valuable assets consist of its accounts receivable.  In the medical services and billing industry, the face value of accounts receivable have no correlation of the actual value of such receivables.  This is based on the fact that actual insurance reimbursements are a fraction of the amount billed.  For example, for Covid testing, actual reimbursements are approximately 40% of the amount billed.

10. WSL holds accounts receivable on its books of approximately $15,603,021.  However, as discussed above, this amount is not the actual value of the receivables since the amount reimbursed is substantially lower.  Based on WSL's experience and past history, it estimates that the current value of its receivables is approximately $6,241,208.  Based on WSL's conservative approach to valuation of its assets, WSL applies a further reduction to this amount

based on the possibility (although undermined at this time) that a portion of the receivables will likely be uncollectable as a result of MMP's failures, as discussed above. Based on the foregoing, WSL estimates the current fair market value of its account receivables to be approximately $5,398,176.

11. Of course, the damage caused by MMP to WSL and its business, including the need to commence this case, is substantial and WSL is working to retain litigation counsel to pursue such claims. WSL estimates that the value of such claims is approximately $5 million.

12. In addition, WSL has cash, inventory and furnishings, fixtures and equipment which provides additional value for the estate. In summary, WSL estimates that its current asset base and its fair market value is as follows:

| | |
|---|---|
| Accounts Receivable | $5,398,176 |
| Inventory | $ 372,110 |
| FF&E | $1,890,565 |
| Claims vs. MMP | $5,000,000 |
| **Total** | **$12,660,851** |

13. Attached hereto as **Exhibit "A"** is a true and correct copy of the UCC search printout evidencing WSL's two (2) secured creditors:

    a. AB Lending SPV I LLC dba Mountain Ridge Capital ("MRC") holds a first priority security interest in substantially all assets of the Debtor to secure an obligation of approximately $1,700,000;

    b. LendSpark Corporation ("Lendspark") holds a second priority security interest in substantially all assets of the Debtor to secure an obligation of approximately $1,729,200.

14. In addition to the foregoing, as evidenced by the UCC search printout, WSL is a party to numerous equipment leases.

15. Finally, WSL estimates that its unsecured debts total approximately $2 million.

C.  **Strategy For Increasing Revenue.**

16. WSL has analyzed its business operations, financials and financing needs. Based on the foregoing, WSL prepared a cash flow budget for the period through year end 2023 ("Budget"), a true and correct copy of which is attached hereto as **Exhibit "B"**.

17. As discussed above, and evidenced by the WSL commenced transition to additional services pre-petition, which involved expansion of operations. These enhanced operations will generate revenue for the benefit of the estate and all creditors.

18. For example, WSL has a revenue stream from the "Halo" channel. This channel includes 10,000 teamster union members and their family receiving lab testing from WSL, with a requirement by the union of at least two (2) tests annually. It is anticipated that the ramp up period will commence in September 2023 with substantial revenue going forward in the amount of approximately $125,000 per week. WSL still needs to expend approximately $60,000 to complete the build out of its testing facility therein, as projected in the Budget.

19. In addition, WSL is expanding testing operations in Guam, composed of approximately 200,000 individuals that are currently served by only one laboratory. Although the cost to complete the buildout is approximately $145,000, WSL projects its revenues to ramp up to approximately $95,000 per week by year end. This is based on the fact, that WSL is already an "In Network" provided with two (2) insurance companies in Guam and a vendor to one (1) hospital, with expansions continuing.

20. WSL is pursuing even more revenue streams for the benefit of all creditors, including the secured creditors herein:

    a. Continuing the services covered under the California Department of Public Health for the grant that has been awarded in the amount of approximately $739,000 to be paid over the next 11 months; and

    b. Complete construction of a Patient Service Center and opening of the site for collections adjacent to a large Optum multi-specialty clinic in South Orange County – the estimated costs to do this is $130,000. This is projected to

generate $924,000 of revenue over the next 20 weeks.

c. WSL is also in the midst of discussions with the County of Los Angeles to provide laboratory services using its mobile laboratories on site at the Pitchess Development Center. This is anticipated to be proposed as a $6 million contract over the next twelve months.

21. While improving business operations, WSL will also be pursuing estate claims and causes of action, including, without limitation, those against the third party biller which WSL values at approximately $5 million.

22. In summary, WSL has a very profitable business. But for the mishandling of claims by MMP, WSL would not be here today. Notwithstanding this setback, WSL is focused on its operations and enhancing revenue and profitability for the benefit of all constituents.

**D. Cash Management Motion.**

23. On the Petition Date, the Debtor maintained four (4) bank accounts at First Republic Bank and one (1) bank account at Bank of Hawaii (the "Accounts"):
- FRB xx5201
- FRB xx2928
- FRB xx5972
- FRB xx5733
- BOH xx4416

24. The vast majority of the payments, if not all, received by the Debtor are automatic, recurring and electronic payments issued either by 3rd parties or governmental entities into the Accounts. The Debtor investigated the process of closing these Accounts and re-directing payments to post-petition DIP accounts and was advised that the process may take months, during which time deposits will cease. The Debtor simply cannot operate as a going concern without access to its revenue and will have to shut down.

25. The Debtor has opened DIP accounts. However, the Debtor respectfully requests authority to keep the foregoing Accounts open solely to receive revenue from third parties. The only disbursements from the Accounts will be transfer of funds to the DIP accounts.

26. In addition, the Banks referenced above have advised the Debtor that

administrative freezes were placed on the Accounts pending an order or instructions from the Court. Debtor respectfully requests that the Court issue an order releasing the holds on the Accounts to allow the Debtor to operate and meet its obligations during the pendency of this case.

**E.     DIP Financing and Cash Collateral.**

27.     As discussed above and in the accompanying projections, WSL requires an inflow of cash in order to meet its short term operational needs, including payroll and completing its buildouts which will generate substantial revenue in a relatively short time period. Based on the fact that approximately $4 million in billings were not properly processed by the third party biller, the staleness associated with such accounts would impair financing efforts with traditional lenders, especially since WSL has secured debt in place at this time. As a result, WSL reached out to its current secured creditors to either negotiate financing or agree to a subordination so that WSL can attract new financing. In addition, WSL reached out to its insiders.

28.     WSL explored the options of financing on an unsecured basis post-petition and/or junior secured basis. Based on the current structure of operations, and especially the billing crisis faced by WSL, no one was willing to provide financing on any basis other than senior secured basis.

29.     Based on WSL's efforts, numerous proposals were received by WSL. After further discussions and negotiations, and consideration of the needs of WSL, WSL determined that MRC's term sheet, a true and correct copy of which is attached hereto as **Exhibit "C"**, was the best option for WSL based on available proposals. Following is a summary of the MRC terms:

  a. The MRC pre-petition secured obligation, in the approximate amount of $1.7 million, will be rolled up into the $2.9 million DIP loan;
  b. Upon financing, the first approximately $1.7 million of the DIP Loan will be utilized to satisfy MRC's pre-petition secured claim;
  c. The $2.9 million DIP Loan will bear interest as follows:

       i. The outstanding obligation equal to the satisfaction of the pre-petition secured claim will bear interest at the pre-petition rate, which is approximately 15% per annum;

       ii. The additional funding (approx. $1.2 million) will bear interest at 25% per annum;

d. The DIP Loan will be a revolver, pursuant to which MRC will sweep all funds on a daily basis and will advance weekly to WSL based on the agreed upon budget.

e. Payments will be applied, first, to the pre-petition obligation and, second, to the post-petition obligation.

f. The DIP loan will mature 12 months from its inception.

g. Upon confirmation of a plan of reorganization, MRC will be entitled to an "exit" fee equal to $300,000.

h. The DIP Loan shall be entitled to a first priority security interest and superpriority status, senior to all other claim, but excluding claims and causes of action under 11 U.S.C. §§ 544-551.

i. MRC has agreed to commence advancing funds to WLS upon execution of the term sheet and entry of the Court's interim order approving the financing, a proposed draft of which is attached hereto as **Exhibit "D"**.

30. Under the circumstances of this case, WSL believes that the proposed financing is fair and equitable and will surely benefit all creditors of this estate. As discussed above and evidence from the projections, WSL is behind on its payroll for people without whom WSL would not survive and would have to shut down. Without personnel, accounts cannot be properly processed and collected. In short, without access to funds to ensure that its employees continue to work for the company, this case will become a liquidation with assets to be depleted to pennies on the dollar. On the other hand, with the infusion of much needed financing, WSL would be able to operate as a going concern, preserve and enhance the value of its assets, which

would improve the position of the secured creditors.

31. Based on the fact that going concern operations will be preserved, as opposed to a liquidation, WSL submits that the secured creditors are adequately protected. In addition, based on WSL's final stages of completion of its expansion to generate substantial additional revenue, the use of funds will further enhance the positions of the secured creditors. Based on the WSL's analysis of its asset base, the equity cushions for all secured creditors, after taking the post-petition financing into consideration, is substantially in excess of 20%. While WSL is hopeful that all secured creditors will voluntarily consent to the proposed financing by the time of the hearing, WSL submits that the approval of the financing even over the objection of a secured creditor is appropriate in this case.

**F.    Payroll Motion.**

32. WSL employs approximately 43 employees (not including insiders) to carry out its business operations. Some of the personnel are compensated on a W-2 basis while others are compensated on a 1099 basis. WSL's personnel are primarily paid via a payroll service that WSL contracts with and utilizes Gusto for US employees and Paylocity for Guam employees which provides payroll and human resources services to WSL. In the normal course of its relationship with the payroll processor, WSL transfer to the payroll processes funds necessary for the payment of compensation by the payroll date and remits all withheld amounts and payroll taxes. Unfortunately, based on the issues discussed above, WSL was unable to make the last payroll and the second unpaid payroll is coming up.

33. On July 28, 2023, WSL will owe compensation to employees for the prior two payroll periods (6/12/23-6/25/23 and 7/10/23 – 7/23/2023), which includes a pre-petition portion of June 12-July 19, 2023. The total compensation due to non-insider employees on July 28, 2023, including all payroll taxes, insurance obligations and 401(k) contributions will be approximately $687,537. A true and correct copy of the payroll schedule showing all amounts required to be paid for the pre-petition and post-petition period is attached hereto as **Exhibit**

"**E**". As evidenced by the attached, no person will receive compensation in excess of the statutory cap provided for in 11 U.S.C. §507.

34. WSL seeks court authority to compensate its non-insider personnel to (i) minimize the personal financial hardship that all of its employees will suffer if the compensation not immediately paid/honored since the last payroll was already missed; (ii) avoid the unnecessary delay in the payment of such priority claims, which delay will negatively impact and interfere with the administration of this chapter 11 bankruptcy case; and (iii) avoid the unfair and unintended consequences to the employees of the timing of WSL's bankruptcy filing and to ensure that additional claims do not arise against WSL as a result of its failure to compensate its employees.

35. Additionally, WSL requires the services of the employees to continue to operate, and would like to ensure that its employees remain incentivized and willing to work for WSL post-petition. It is crucial for WSL to retain at this time the employees to operate its business, particularly during this crucial beginning phase of WSL's bankruptcy case, where additional administrative and other obligations are imposed upon WSL. If WSL does not continue to pay the employees their ordinary and earned compensation and continue to honor employee benefits, the employees will likely quit. Without the employees, WSL's business will be severely impaired, if not eviscerated altogether.

Dated: July 26, 2023                                WORKSITE LABS, INC.


                                                    By: __/s/ Anthony A. Friedman__
                                                         DAVID B. GOLUBCHIK
                                                         ANTHONY A. FRIEDMAN
                                                         J.P. FRITZ
                                                         LEVENE, NEALE, BENDER, YOO
                                                           & GOLUBCHIK L.L.P.
                                                         Proposed Attorneys for Debtor and
                                                         Debtor in Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled **Debtor's Omnibus Statement Of Facts In Support Of "First Day Motions"** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 26, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- David B Golubchik    dbg@lnbyg.com, stephanie@lnbyb.com
- Gregory Kent Jones (TR)    gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com
- Kelly L Morrison    kelly.l.morrison@usdoj.gov
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

**2. SERVED BY UNITED STATES MAIL**: On **July 26, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Vincent P. Zurzolo  
United States Bankruptcy Court  
Edward R. Roybal Federal Building  
255 E. Temple Street, Suite 1360 / Courtroom 1368  
Los Angeles, CA 90012

☒ *Service information continued on attached page*

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 26, 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

| Chambers_VZurzolo@cacb.uscourts.gov | hwinsberg@phrd.com | mweiss@phrd.com |
| --- | --- | --- |
| bharvey@buchalter.com | lgarner@phrd.com | sgubner@bg.law |

☐ *Service information continued on attached page*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 26, 2023 | Rebecka Merritt | /s/ Rebecka Merritt |
| --- | --- | --- |
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    **F 9013-3.1.PROOF.SERVICE**

Worksite Labs, Inc.
20 Largest Creditors +
File #10123

| | | |
|---|---|---|
| McKesson Medical Surgical<br>9954 Maryland Dr<br>Ste 4000<br>Henrico, VA 23233 | Orchard Software<br>701 Congressional Blvd<br>Ste 360<br>Carmel, IN 46032 | Rapid Acceleration Partners, Inc.<br>2251 Longview Rd<br>Irving, TX 75063 |
| Lumira DX<br>221 Crescent St<br>Watham, MA 02453 | Siemens Healthcare Diagnostics<br>221 Gregson Dr<br>Cary, NC 27511 | Medical Practice Partner LLC<br>PO Box 2877<br>Riverview, FL 33568-2877 |
| Randstad Healthcare<br>3625 Cumberland Blvd<br>Suite 300<br>Atlanta. GA 30339 | BairesDev<br>800 W. El Camino Real, Suite 180<br>Mountain View, CA 94040 | American Express<br>P.O. Box 981535<br>El Paso, TX  75265-0448 |
| SalesCatcher LLC<br>2133 W Chapman Ave<br>Suite L<br>Orange CA 92868 | Abbott Laboratories Inc<br>PO Box 92679<br>Chicago, IL 60675-2679 | Rebulld California Alliance<br>7722 Avalon Blvd<br>Los Angeles, CA 90003 |
| Labcorp<br>PO Box 12140<br>Burlington, NC 27216 | Dotted Line Collaborations<br>8000 Franklin Fanns Dr<br>Ste 100<br>Henrico VA 23229 | Hanna Construction<br>1203 W Shelly Ct<br>Orange, CA 92868-1240 |
| Beam & Associates<br>787 N Lincoln St<br>Orange CA 92867 | Life Technologies Corporation<br>12088 Collections Center Drive<br>Chicago, IL 60693 | Strategic Medical Properties, Inc<br>1810 S El Camino Real, Ste C<br>San Clemente, CA 92672 |
| Greenberg Traurig<br>401 E Las Olas Blvd, Ste 2000<br>Ft Lauder dale, FL  33301 | Reliance Law Group<br>10000 Washington Blvd, Flr 6<br>Culver City, CA 90232 | First Republic Bank<br>111 PINE STREET<br>SAN FRANCISCO, CA 94111 |
| First Republic Bank<br>C/O Agent For Service, Becky Degeorge<br>2710 Gateway Oaks Drive<br>Sacramento, Ca 95833 | Bank Of Hawaii<br>130 Merchant Street<br>Honolulu, Hi 96813 | Bank Of Hawaii<br>C/O Agent For Service, Jackson Yang<br>720 14th St<br>Sacramento, Ca 95814 |
| LendSpark Corporation<br>2554 Gateway Road<br>Carlsbad, Ca 92009 | | |