DAVID B. GOLUBCHIK (SBN 185520)
ANTHONY A. FRIEDMAN (SBN 201955)
JOHN-PATRICK M. FRITZ (SBN 245240)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, CA  90034
Telephone: (310) 229-1234
Fax: (310) 229-1244
Email: DBG@LNBYG.COM, AAF@LNBYG.COM, JPF@LNBYG.COM

Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No.: 2:23-bk-14539-VZ |
| WORKSITE LABS, INC., | Chapter 11 Case<br>Subchapter V |
| Debtor and Debtor in Possession, | **DEBTOR'S EMERGENCY MOTION FOR AN ORDER:**<br><br>**(I) AUTHORIZING DEBTOR TO (A) OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. § 364 AND (B) UTILIZE CASH COLLATERAL OF PREPETITION SECURED ENTITIES PURSUANT TO 11 U.S.C. § 363;**<br>**(II) SCHEDULING A FINAL HEARING; AND**<br>**(III) GRANTING RELATED RELIEF;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>[Declaration of Gary Frazier in Support Filed Separately and Concurrently]<br><br><u>Hearing:</u><br>DATE:       July 27, 2023<br>TIME:        11:00 a.m.<br>PLACE:     Courtroom 1368<br>                   255 East Temple Street<br>                   Los Angeles, CA 90012 |

Pursuant to Local Bankruptcy Rule 2081-1, and 11 U.S.C. §§ 363 and 364, Worksite Labs, Inc., a Delaware corporation (the "Debtor"), the debtor and debtor in possession in the above-referenced Chapter 11 bankruptcy case, hereby respectfully submits "Debtor's Emergency Motion for an Order Authorizing Debtor to (A) Obtain Postpetition financing Pursuant to 11 U.S.C. § 364 and (B) Utilize Cash Collateral of Prepetition Secured Entities Pursuant to 11 U.S.C. § 363; (II) Scheduling a Final Hearing; and (III) Granting Related Relief" (the "Motion") for consideration on an emergency basis.  By way of the Motion, the Debtor respectfully requests that the Court enter an interim order (the "Interim Order") substantially in the form of the proposed order attached as **Exhibit D** to the separately and concurrently filed declaration of Gary Frazier (the "Frazier Declaration", authorizing the Debtor to borrow funds on the terms set forth in the term sheet (the "Term Sheet") attached as **Exhibit C** to the Frazier Declaration, and use cash collateral in accordance with the budget (the "Budget") attached as **Exhibit B** to the Frazier Declaration, and granting related relief.

More specifically, the Motion seeks authority as follows: (1) Authorizing the Debtor to obtain postpetition financing up to the principal amount of up to $2,900,000.00, minus the amount of prepetition debt (approximately $1,700,000) owing to MRC outstanding (the "DIP Loan") from AB Lending SPV I, LLC, a Delaware limited liability company, dba Mountain Ridge Capital  (the "Lender" and/or "MRC"), on a senior secured, super-priority basis pursuant to the terms of a Term Sheet (the "Term Sheet"), a true and correct copy of which is attached to the Frazier Declaration as **Exhibit "C"**, with the DIP Loan to be used to (pursuant to the Budget ("Budget") attached to the Frazier Declaration as **Exhibit "B"**: (a) fund, among other things, ongoing working capital, general corporate, and other financing needs of the Debtor, (b)  pay certain transaction fees, and other costs and expenses of administration of the Debtor's bankruptcy case (the "Case"), and (c) pay fees expenses owed to the Lender pursuant to the Term Sheet;

(1)     Authorizing and empowering the Debtor to execute and enter into loan documents after interim approval of the Motion (the "DIP Loan Documents") and all other related

documents and agreements and to perform such other and further acts as may be required in connection with the DIP Loan Documents;

(2)    Providing, pursuant to Sections 364(c)(1), (2), and (3), that the obligations under the DIP Loan Documents, be secured (without any further filings) by valid, binding, continuing, enforceable, fully perfected, and security interests and liens (the "DIP Liens") in and on all prepetition and postpetition property and assets of the Debtor (the "Collateral"), provided, however, that the DIP Liens shall not extend or attach to, and the Collateral shall not include, causes of action under Chapter 5 of the Bankruptcy Code, including without limitation Sections 502(d), 544, 545, 547, 548, 549 and 550, any other avoidance actions under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, nonbankruptcy law, and the proceeds thereof, whether real or personal, tangible or intangible, and wherever located, and whether now existing or hereafter acquired, including proceeds, products, offspring, rents and profits thereof;

(3)    Authorizing the Debtor, pursuant to Sections 105, 361, 363, 541 and 553 and FRBP 2002, 4001 and 9014, to use Cash Collateral (as defined under Section 363) in accordance with the terms of the DIP Loan Documents and the Budget, subject to any variance allowance provided by the DIP Loan Agreement or otherwise approved by Lender;

(4)    Vacating and modifying the automatic stay imposed by Section 362 solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and the Financing Orders;

(5)    Finding that adequate notice of the Motion has been provided;

(6)    Scheduling, pursuant to FRBP 4001, a final hearing (the "Final Hearing") before this Court to consider entry of the Final Order approving the DIP Loan and authorizing the use of Cash Collateral on a final basis;

(7)    Waiving any applicable stay, including under FRBP 4001(b) and (c) and providing for the immediate effectiveness of the Interim Financing Order; and

(8)    Granting related relief.

**OTHER INFORMATION REGARDING THE DIP LOAN DOCUMENTS AND CASH**

**COLLATERAL USE THEREUNDER**

In addition to the summary of terms set forth above, the Debtor provides the following information regarding principal terms of the proposed loan under the Term Sheet as required by FRBP 4001(b)(1)(B) and (c)(1)(B):[1]

**Term**:  The maturity date (the "Maturity Date") of the DIP Facility will be (and all of the DIP Obligations (as defined in the Term Sheet) will be repaid by the Debtor in full, in cash) on the earliest of (i) the stated maturity, which will be July 26, 2024, (ii) the date of termination of the DIP Facility or commitment thereunder, (iii) the effective date of a confirmed plan of reorganization or liquidation for the Debtor (a "Plan"), (iv) the date that is forty-five (45) days after the entry of the Interim Financing Order if the Final Financing Order (as defined below) has not been entered by such date, and (v) the acceleration of the loans under the DIP Facility or termination of the commitments under the DIP Facility, including, without limitation, as a result of the occurrence of an Event of Default (as defined in the Term Sheet).

**Rate:**  25% per annum.

**Exit Fee:**  $300,000 upon plan confirmation.

**Effective Date:**  Upon the entry of the Interim Order approving the DIP Loan, provided that the Interim Order is not subject to a stay pending appeal.

**Prepayment:**  No prepayment penalty for payment prior to the Maturity Date; however, notwithstanding the foregoing, Lender to receive not less than six (6) months' worth of interest if prepaid within six (6) months of the loan funding date.

**Use of Proceeds:**  The proceeds of the DIP Loan shall be used in accordance with the Budget.

---

[1] As discussed, the DIP Loan Agreement will conform to the terms of the Term Sheet and contain other customary terms used in similar postpetition lending transactions and which the Lender and Debtor will prepare and lodge with the Court, and serve on parties in interest, after entry of the Interim Order and prior to the Final Hearing on the Motion.  If there are any material differences between the actual terms of the DIP Loan Agreement and the summary of the expected terms set forth herein, the Debtor will describe the difference in conjunction with lodging the DIP Loan Agreement.

Pursuant to FRBP 4001, the Debtor hereby provides the following disclosures with respect to the terms of the Term Sheet:

| | **Term Sheet** |
|---|---|
| A grant of priority or a lien on property of the estate under § 364(c) or (d) | Yes – page 1 and 3 |
| The providing of adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim | Yes – page 4 |
| A determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim | No – but see page 7 – to challenge the prepetition liens is an event of default |
| A waiver or modification of Code provisions or applicable rulings relating to the automatic stay | Yes – page 1 – Perfection section |
| A waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request to obtain authority to obtain credit under § 364 | Yes – page 7 (Default remedies) |
| The establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order | N/A |
| A waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien | N/A |
| A release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, | Yes – page 9 |

|  | **Term Sheet** |
|---|---|
| including any modification of the statute of limitations or other deadline to commence an action |  |
| The indemnification of an entity | Yes – page 9 |
| A release, waiver, or limitation of any right under Section 506(c) | Yes – page 9 |
| The granting of a lien on any claim or cause of action arising under Sections 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a) | N/A |

Pursuant to the provisions of LBR 4001-2, the Debtor hereby provides the following additional disclosures with respect to the terms of the Term Sheet:

|  | **Term Sheet** |
|---|---|
| With respect to a professional fee carve out, disparate treatment for professionals retained by a creditors' committee from that provided for the professionals retained by the debtor | N/A |
| Pay down prepetition principal owed to a creditor | Yes – page 4 (adequate protection (b)) |
| Findings of fact on matters extraneous to the approval process | N/A |

## **INFORMATION REGARDING OTHER PURPORTED SECURED CREDITORS AND NOTICE OF THE MOTION**

On the Petition Date, the following secured creditors existed with respect to the Debtor and its estate and the amounts of their claims:

| Secured Priority Position | Secured Creditor | Claim Amount |
|---|---|---|
| 1 | MRC | $1,700,000 approx |
| 2 | Lendspark | $1,729,200 approx |

The Lender, being the senior secured creditor, has agreed to the proposed financing terms. The Debtor is informed that there is an intercreditor agreement between MRC and Lendspark.

The Debtor reached out to its current secured creditors to either negotiate financing or agree to a subordination so that the Debtor can attract new financing. In addition, the Debtor reached out to its insiders. The Debtor explored the options of financing on an unsecured basis post-petition and/or junior secured basis. Based on the current structure of operations, and especially the billing crisis faced by the Debtor, no one was willing to provide financing on any basis other than senior secured basis. Based on the Debtor's efforts, numerous proposals were received by the Debtor. After further discussions and negotiations, and consideration of the needs of the Debtor, the Debtor determined that MRC's term sheet was the best option for the Debtor based on available proposals. Based on the foregoing, the Debtor believes that all secured creditors affected by the Motion have, or will, consent to the proposed financing transaction.

In order to provide maximum notice of this Motion, concurrently with the filing of this Motion with the Court, the Debtor served this Motion by email on the affected secured creditors. In addition, the Debtor served by overnight mail, or NEF where applicable, a copy of the Motion upon (1) the secured creditors, (2) the Office of the United States Trustee for the Central District of California (the "UST"), and (3) any other party that has filed a request for notice pursuant to FRBP 2002 or is required to receive notice under the FRBP or LBRs.

This Motion is based on this Motion, the annexed Memorandum, separately concurrently filed omnibus statement of facts and Frazier Declaration, the arguments and statements of counsel to be made at the hearing on the Motion, and other admissible evidence properly brought before the Court.

**The Debtor submits that an emergency hearing is warranted because the Debtor needs to pay the expenses set forth in the Budget to preserve its business and assets and currently lack the funds to do so. Accordingly, the Debtor requests that the Court set a hearing on the Motion as soon as is convenient for the Court.**

**WHEREFORE**, the Debtor respectfully requests that the Court:

(1)      affirm the adequacy of the notice given;

(2)      grant the relief requested in the Motion on an interim basis;

(3)      schedule a Final Hearing on the Motion to consider entry of a Final Order granting the relief requested in the Motion on a final basis; and

(4)      grant such further relief as the Court deems just and proper.

Dated: July 26, 2023                    WORKSITE LABS, INC.


By:___/s/ David B. Golubchik_____
            DAVID B. GOLUBCHIK
            ANTHONY A. FRIEDMAN
            JOHN-PATRICK M. FRITZ
            LEVENE, NEALE, BENDER, YOO
              & GOLUBCHIK L.L.P.
            Proposed Attorneys for Debtor and
            Debtor in Possession

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

Worksite Labs, Inc., a Delaware corporation (the "Debtor" or "WSL"), the debtor and debtor in possession in the above-referenced Chapter 11 bankruptcy case, respectfully incorporates the facts from its separately and concurrently filed omnibus statement of facts and supporting declaration of Gary Frazier.

### II.

### DISCUSSION

**A.    THE DEBTOR SHOULD BE AUTHORIZED TO OBTAIN THE PROPOSED DIP LOAN**

**1.    THE DEBTOR SHOULD BE AUTHORIZED TO OBTAIN THE PROPOSED DIP LOAN FROM THE LENDER TO MAINTAIN THE DEBTOR'S BUSINESS AND TO MAINTAIN AND PRESERVE THE VALUE OF THE DEBTOR'S ASSETS**

Pursuant to Section 364(c), a debtor may, in the exercise of its business judgment, incur secured debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interest of the estate. *See, e.g., In re Simasko Production Co.*, 47 B.R. 444, 448-9 (D. Colo. 1985) (authorizing interim financing agreement where debtor's business judgment indicated financing was necessary and reasonable for benefit of estate); *In re Ames Dept. Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to postpetition credit, courts "permit debtors-in-possession to exercise their basic business judgment consistent with their fiduciary duties"). Section 364(c) provides, in pertinent part, that:

> (c)   If the trustee [or debtor in possession] is unable to obtain unsecured credit allowable-under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –
> (1)   with priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of this title:
> (2)   secured by a lien on property of the estate that is not otherwise subject to a lien; or

1                                   (3) secured by a junior lien on property of the estate that is
subject to a lien.

2

3   11 U.S.C. § 364(c).

4        Section 364(d)(1) governs the incurrence of senior secured debt or "priming" loans.

5 Pursuant to Section 364(d)(1), the Court may, after notice and a hearing, authorize the obtaining

6 of credit or the incurring of debt secured by a senior or equal lien only if –

7

8                 (1)    the trustee is unable to obtain such credit otherwise; and
                (2)    there is adequate protection of the interest of the holder of

9                 the lien on the property of the estate on which such senior or equal
                lien is proposed to be granted.

10

11   11 U.S.C. § 364 (d)(1).

12        Section 364 is structured with an escalating series of inducements which a debtor in

13 possession may offer to attract credit during the postpetition period.  *In re Photo Promotion*

14 *Associates, Inc.*, 87 B.R. 835, 839 (Bankr. S.D.N.Y. 1988), *aff'd*, 881 F.2d 6 (2d. Cir. 1989).

15 Where a trustee or debtor in possession cannot otherwise obtain unsecured postpetition credit,

16 such credit may be obtained under certain carefully proscribed conditions.  *In re T.M. Sweeney &*

17 *Sons LTL Services, Inc.*, 131 B.R. 984, 989 (Bankr. N.D. Ill. 1991).  For example, if creditors are

18 unwilling to extend unsecured credit to a debtor in possession, further inducements are offered,

19 with court approval after notice and a hearing, including, without limitation, liens equal to or

20 senior to existing liens on encumbered property in accordance with 11 U.S.C. § 364(d).  *In re*

21 *Photo Promotion Associates, Inc.*, 87 B.R. at 839.

22        Section 364(c) also enumerates certain incentives that a court may grant to postpetition

23 Lender.  However, the list set forth in Section 364(c) is not exhaustive.  Courts have frequently

24 authorized the use of inducements not specified in the statute.  *See, e.g., In re Ellingsen MacLean*

25 *Oil Co.*, 834 F.2d 599 (6th Cir. 1987) (affirming financing order which prohibited any challenges

26 to the validity of already existing liens); *In re Defender Drug Stores*, 126 B.R. 76 (Bankr. D.

27 Ariz. 1991) (authorizing enhancement fee to postpetition lender), *aff'd* 145 B.R. 312, 316

28 (Bankr. 9th Cir. 1992) ("[b]ankruptcy courts . . . have regularly authorized postpetition financial

1  arrangements containing lender incentives beyond the explicit priorities and liens specified in

2  section 364").

3      As discussed above, the Debtor lacks cash to meet the Debtor's ability to pay immediate

4  and ongoing expenses.  Financing is necessary to maintain business operations pending the

5  Debtor's pursuit of a reorganization strategy for the benefit of all creditors and interest holders.

6  Thus, subject to the approval of the Court, and in order to obtain the necessary DIP Loan, the

7  Debtor has agreed that the DIP Loan will be entitled to administrative priority under Sections

8  364(c)(i) and 503(b) of the Bankruptcy Code.  The DIP Liens will be first priority Liens subject

9  only to the "Permitted Priority Liens," which shall mean and include only those Liens in existence

10 on the Petition Date that are permitted Liens under the Pre-Petition Credit Agreement and that are

11 legal, valid, enforceable, and not avoidable or subject to equitable subordination or contractual

12 subordination pursuant to any agreement with Pre-Petition Lender.

13     For all of the reasons explained herein, the Debtor believes that granting the Lender the

14 foregoing protections is warranted, appropriate, and necessary given the circumstances of this Case

15 where the Lender has agreed to provide the Debtor with critically necessary emergency DIP Loan

16 and to consensual Cash Collateral use thereafter, without which the Debtor would be forced to

17 cease operations and liquidate.

18     Two factors courts consider in determining whether to authorize postpetition financing

19 which contemplates the granting of a security interest in favor of the lender are (1) whether the

20 debtor is unable to obtain unsecured credit per Section 364(b), *i.e.*, by allowing a lender only an

21 administrative claim per Section 364(b)(1)(A); and (2) whether the terms of the transaction are

22 fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed

23 lender.  *In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D.Pa. 1987); *see also In re Aqua*

24 *Assoc.*, 123 B.R. 192, 195 (Bankr. E.D.Pa. 1991).

25     In addition to the foregoing, a debtor in possession seeking subordination of liens to new

26 financing must establish adequate protection of the liens to be subordinated to the new financing.

27 *In re C.B.G. Ltd.*, 150 B.R. 570, 571 (Bankr. M.D.Pa. 1992).

28     The Debtor submits that all of these standards have been satisfied in this Case.

### a.    The Debtor Is Unable To Obtain Unsecured Credit Or Secured Credit On a Better Basis

In satisfying the standards of Section 364, a debtor need not seek credit from every available source, but should make a reasonable effort to seek other sources of credit available under § 364(a) and (b).  *See, e.g., In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986) (trustee had demonstrated by good faith effort that credit was not available without senior lien by unsuccessfully contacting other financial institutions in immediate geographic area; "the statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable"); *Ames, supra*, 115 B.R. at 40 (finding that debtors demonstrated the unavailability of unsecured financing where debtors approached four lending institutions).

As set forth in detail in the accompanying Frazier Declaration, the Debtor sought financing from multiple potential lenders and obtained competing offers.  Based on the Debtor's business judgment, this offer from the Lender was the best offer made to the estate.

For an entire week post-petition, the debtor continued with its efforts post-petition.  Fortunately, the Lender has agreed to provide the proposed financing on the basis of §§ 364(c)(i) and 503(b) on a super-priority basis.  Although the DIP Loan is a senior secured super-priority credit facility, the Lender (RMC) is already the prepetition senior secured creditor, and, thus, is not priming itself, but, rather, adding to the secured debt already in its senior secured position.  Based on the foregoing, and the fact that the Debtor requires immediate access to funds to avoid irreparable harm to the business and all creditors, the Debtor has concluded, in an exercise of its sound business judgment, that the DIP Loan to be provided by the Lender represents the best financing presently available to the Debtor.

### b.    The Terms Of The Proposed Postpetition DIP Loan From The Lender Are Fair, Reasonable, and Adequate

The Debtor submits that terms of the proposed DIP Loan from the Lender are fair, reasonable, and adequate.  As noted above, the terms and conditions set forth in the Term Sheet were negotiated extensively, in good faith, and at arms' length by the parties.  The Lender is well aware of the fact that the Debtor would have very little chance of avoiding an immediate shutdown of the Debtor's business if not for the DIP Loan offered by the Lender.  The Lender

has agreed to provide the DIP Loan to the Debtor in an effort to assist the Debtor in preserving the going concern value of the Debtor's business pending a reorganization or other exit strategy. The Debtor submits that the benefits afforded to the Debtor by the DIP Loan justify the protections being afforded under the terms of the Term Sheet. The DIP Loan offers the Debtor its best and, likely, only opportunity to maintain and preserve the value of its assets while pursuing a reorganization strategy to benefit all creditors and parties in interest in this Case.

Based on the foregoing, the Debtor believes that (1) the terms and conditions of the proposed DIP Loan under the Term Sheet are fair and reasonable, reflect the Debtor's exercise of prudent business judgment in light of the current circumstances and are supported by reasonably equivalent value and fair consideration, (2) the DIP Loan has been negotiated in good faith and at arm's length by the Debtor and the Lender, and (3) any credit extended, loans made, and other financial accommodations extended to the Debtor by the Lender has been extended, issued or made, as the case may be, in "good faith" within the meaning of Section 364(e).

### c. Any Prepetition Liens Are Adequately Protected

The following chart summarizes the Debtor's prepetition secured debt, for which there is adequate protection in the form of equity cushions:

| Secured Priority Position | Secured Creditor | Claim Amount |
|---|---|---|
| 1 | MRC | $1,700,000 approx |
| 2 | Lendspark | $1,729,200 approx |

The Debtor estimates that its current asset base and its fair market value is as follows, resulting in multiples of adequate protection equity cushions:

| | |
|---|---|
| Accounts Receivable | $5,398,176 |
| Inventory | $  372,110 |
| FF&E | $1,890,565 |
| Claims vs. MMP | $5,000,000 |
| **Total** | **$12,660,851** |

Even though adequate protection is not required because the Debtor is not seeking priming liens, here, even if there were priming liens, there is ample adequate protection. Section 364(d)(1)(B) requires the furnishing of adequate protection in favor of lien holders which assert an interest in collateral.  11 U.S.C. §§ 364(d)(1)(B).  Although Section 364 does not specifically define the term "adequate protection," Section 361 requires that adequate protection be furnished to the extent Debtor's "use, sale, or lease under section 363 …, or any grant of a lien under section 364 … results in a decrease in the value of such entity's interest in such property."  11 U.S.C. §§ 361(1), (2), (3).  Stated succinctly, adequate protection protects a secured creditor against a decrease in the value of its collateral.  *See e.g., In re Planned System, Inc.*, 78 B.R. 852, 861-62 (Bankr. S.D. Ohio 1987).  This standard applies equally with respect to "priming" financing under Section 364(d)(1)(B).  *See, e.g., In re Hubbard Power & Light*, 202 B.R. 680, 685 (Bankr. E.D.N.Y. 1996) ("The goal of adequate protection for purposes of the provision entitling a debtor to obtain financing secured by liens senior to all other interests is to safeguard the secured creditor from diminution in the value of its interests."); *In re Aqua Assoc.*, 123 B.R. at 196; *In re Beker Ind. Corp.*, 58 B.R. 725, 741-42 (Bankr. S.D.N.Y. 1986).

The Court has broad discretion to determine whether adequate protection is furnished.  *See e.g., In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992).  Whether the party entitled to such protection is over or undersecured is not dispositive of whether adequate protection is furnished.  As the court in *Aqua Assoc.*, 123 B.R. 192, noted:

> Therefore, we believe that, while the presence of an equity cushion should be a relevant factor, it should not be a determinative factor in any 'adequate protection' analysis, and particularly one relating to § 364(d)(1)(B).  The important question, in determination of whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.

*Id.* at 196 (emphasis added; approving priming financing where interest rate was 5% over prime and loan likely would enhance value of estate).

The preservation of the value of a secured creditor's lien is also sufficient to provide adequate protection to a secured creditor when a debtor seeks to use cash collateral.  *In re*

1    *Triplett*, 87 B.R. 25 (Bankr. W.D. Tex. 1988); *see also In re Stein*, 19 B.R. 458 (Bankr. E.D. Pa.

2    1982).  The *Stein* Court determined that the use of cash collateral was necessary to the continued

3    operations of the debtor, and that the creditor's secured position could only be enhanced by the

4    continued operation of the debtor's business.  *See also In re McCombs Properties VI, Ltd.*, 88

5    B.R. 261, 265 (Bankr. C.D. Cal. l988), where the court determined that the debtor's use of cash

6    collateral for needed repairs, renovations and operating expenses eliminated the risk of

7    diminution in the creditor's interest in the cash collateral and such use would more likely

8    increase cash collateral.  Other courts have also determined that a debtor's continued business

9    operations can constitute the adequate protection of a secured creditor.  *See Matter of Pursuit*

10   *Athletic Footwear, Inc.,* 193 B.R. 713 (Bankr. D. Del. 1996); *In re Newark Airport/Hotel Ltd.*

11   *Partnership,* 156 B.R. 444, 450 (Bankr. D.N.J. 1993); *In re Dynaco*, 162 B.R. 389, 394-5

12   (Bankr. D.N.H. 1993); *In re Immenhausen Corp.*, 164 B.R. 347, 352 (Bankr. M.D. Fla. 1994).

13      In determining adequate protection, Courts have stressed the importance of promoting a

14   debtor's reorganization.  In *In re O'Connor*, 808 F.2d 1393, 1398 (10th Cir. 1987)*,* the Tenth

15   Circuit stated:

16         In this case, Debtors, in the midst of a Chapter 11 proceeding,
           have proposed to deal with cash collateral for the purpose of
17         enhancing the prospects of reorganization.  This quest is the
           ultimate goal of Chapter 11.  Hence, the Debtor's efforts are not
18         only to be encouraged, but also their efforts during the
           administration of the proceeding are to be measured in light of
19         that quest.  Because the ultimate benefit to be achieved by a
           successful reorganization inures to all the creditors of the estate, a
20         fair opportunity must be given to the Debtors to achieve that end.
           Thus, while interests of the secured creditor whose property rights
21         are of concern to the court, the interests of all other creditors also
           have bearing upon the question of whether use of cash collateral
22         shall be permitted during the early stages of administration.
23

24   808 F.2d at 1937.

25      Absent continued operations, which can only occur with an inflow of funds, the Debtor

26   will have no choice but to shut down and liquidate, with adverse effects on creditors and the

27   estate and all stakeholders.  On the other hand, the proposed financing will allow the Debtor to

28   continue operating and preserve its business.  This fact alone not only protects the secured

1   creditors' positions, but enhances it over the current liquidation alternative. Based on the

2   foregoing, the Debtor submits that the secured creditors' liens are adequately protected by the

3   proposed financing herein.

4   **d.  The Proposed DIP Loan Is Necessary And Proper**

5   While in determining whether to approve such a transaction, a Court is authorized to act

6   in its informed discretion, *In re Ames Department Stores, Inc.*, 115 B.R. at 37, the Court should

7   give broad deference to the business decision of a Chapter 11 debtor, particularly with respect to

8   a debtor's business judgment regarding the need for and proposed use of funds. *Richmond*

9   *Leasing Co. v. Capital Bank N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985). As the Court noted in *In*

10  *re Ames Dept. Stores Inc., supra*, "the court's discretion under section 364 is to be utilized on the

11  grounds that permit the reasonable business judgment [of the Debtor] to be exercised . . ." *In re*

12  *Ames Department Stores, Inc.*, 115 B.R. at 40.

13  There is little dispute that, without substantial postpetition financing, the Debtor will be

14  forced to immediately cease business operations and engage in a disorderly fire-sale liquidation

15  of its assets without the ability to maximize value through reorganization, thereby resulting in

16  virtually no funds for the estate and its creditors. In contrast, the proposed DIP Loan affords the

17  Debtor the ability to maintain the going-concern value of its business and provides the Debtor

18  with the time necessary to pursue an orderly reorganization strategy. The Debtor has therefore

19  concluded that obtaining the proposed DIP Loan from the Lender is critically important to

20  maximizing the recovery for creditors, and is therefore in the best interests of the Debtor's estate.

21

22  **B.  THE DEBTOR SHOULD BE AUTHORIZED TO USE CASH COLLATERAL**
    **PROVIDED BY THE DIP LOAN TO PAY NECESSARY OPERATING**
23  **EXPENSES AS SET FORTH IN THE BUDGET**

24  **1.  The Debtor Must Be Authorized To Use Cash Collateral To Operate,**
    **Maintain, And Preserve Its Assets In Accordance With The Budget**
25
    The Debtor's use of property of the estate is governed by Section 363. 11 U.S.C. §
26
    363(c). Section 363(c)(1) provides in pertinent part:
27
28          If the business of the debtor is authorized to be operated under
            section. … 1108 … of this title and unless the court orders

> otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).  A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363.  11 U.S.C. § 1107(a).

"Cash collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest [.]"  11 U.S.C. § 363(a).  Section 363(c)(2) establishes a special requirement with respect to "cash collateral," providing that the trustee or debtor in possession may use "cash collateral" under subsection (c)(1) if:

> (A)    each entity that has an interest in such cash collateral consents; or
> (B)    the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

11 U. S. C. §363(c)(2)(A) and (B).

It is well settled that it is appropriate for a Chapter 11 debtor to use cash collateral for the purpose of maintaining and operating its property.  11 U.S.C. § 363(c)(2)(B); *In re Oak Glen R-Vee*, 8 B.R. 213, 216 (Bankr. C.D. Cal. 1981); *In re Tucson Industrial Partners*, 129 B.R. 614 (B.A.P. 9th Cir. 1991).  In addition, where the debtor is operating a business, it is extremely important that the access to cash collateral be allowed in order to facilitate the goal of reorganization: "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary to operate a business."  *In re Dynaco Corporation*, 162 B.R. 389 (Bankr. D.N.H. 1993), *quoting In re Stein*, 19 B.R. 458, 459. (Bankr. E.D. Pa. 1982).

For all of the reasons discussed herein, the Debtor has no ability to continue to maintain its business operations or preserve the value of its assets unless the Debtor (1) obtains the DIP Loan from the Lender, which will result in the Debtor's cash becoming the Lender' Cash

1    Collateral and the purported Cash Collateral of the purported secured creditors, and (2) have the

2    ability to use Cash Collateral to pay the Debtor's projected expenses in accordance with the

3    Budget.  The Debtor's inability to pay those expenses would cause immediate and irreparable

4    harm to the Debtor's bankruptcy estate.  Indeed, the Debtor's inability to pay its expenses set

5    forth in the Budget would result in the immediate or near immediate shutdown of the Debtor's

6    business and the decimation of the value (going-concern or otherwise) of the Debtor's business

7    and assets.  The maintenance of the Debtor's business and preservation of the Debtor's assets are

8    critical to maximizing value and providing for recoveries to creditors in this Case.

9
           **2.**       **The Lender Has Consented to the Debtor's Use of Cash Collateral**
10
                        **and the Purported Secured Creditors Are Adequately Protected**

11    Pursuant to Section 363(c)(2), the Court may authorize a debtor in possession to use a

12    secured creditor's cash collateral if the secured creditor consents to the use of cash collateral or is

13    adequately protected.  *In re Mellor*, 734 F.2d at 1400; *see also In re O'Connor*, 808 F.2d at 1398;

14    *In re McCombs Properties VI, Ltd.*, 88 B.R. at 265.

15    Here, the Lender has consented to the Debtor's use of Cash Collateral to pay the expenses

16    set forth in the Budget in accordance with the provisions of the Term Sheet.  As to the purported

17    secured creditors, as set forth above, they are adequately protected by continued operations of the

18    Debtor's business.

19    Furthermore, there are ample equity cushions for the secured creditors, as discussed

20    above.  It is well established that the existence of an equity cushion alone can constitute adequate

21    protection to a secured creditor when a debtor seeks to use cash collateral.  In re Mellor, 734

22    F.2d 1396 (9th Cir. 1984).  In <u>Mellor</u>, the Ninth Circuit held that a 20% equity cushion

23    constituted adequate protection as a matter of law.  <u>Id</u>. at 140-01.  The Ninth Circuit indicated

24    that a cushion of less than 20% could also constitute adequate protection and cited with approval

25    decisions holding that equity cushions of between 10% and 20% constituted adequate protection.

26    <u>Id</u>., (<u>citing</u> <u>In re McGowan</u>, 6 B.R. 241, 243 (Bankr.E.D.Pa.1980) (holding that a 10% cushion is

27    adequate protection); <u>In re Rogers Development Corp.</u>, 2 B.R. 679, 685 (Bankr.E.D.Va.1980)

28    (equity cushion of approximately 15% to 20% was adequate protection notwithstanding that the

1  debtors had no equity in the property);  see also, In re Hawaiian Pacific Industries, 17 B.R. 670,

2  673 (Bankr.D. Hawaii 1982) (15% cushion constituted adequate protection).

3     Based on the foregoing, the Debtor submits that the requirements of Section 363(c)(2)

4  have been satisfied and that the Debtor should be authorized to use Cash Collateral in accordance

5  with the Budget.

6  **C.**  **THE WAIVER OF ANY APPLICABLE STAY IS APPROPRIATE**

7     For the reasons noted herein, the Debtor will suffer immediate and irreparable harm if the

8  Debtor is not able to pay the expenses set forth in the Budget, pending a final hearing on the

9  Motion.  The Debtor requires the terms of the Interim Order to become immediately effective to

10 ensure that the Debtor will be able to obtain the proposed DIP Loan from the Lender and use the

11 Cash Collateral provided by the DIP Loan to pay its critical expenses.  Based on the foregoing,

12 the Debtor requests that any applicable stay, including the stay provided under FRBP 6004, be

13 waived to allow the Interim Order to become immediately effective.

14                **III.**

15             **CONCLUSION**

16   **WHEREFORE**, the Debtor respectfully requests that the Court:

17   (5) affirm the adequacy of the notice given;

18   (6) grant the relief requested in the Motion on an interim basis;

19   (7) schedule a Final Hearing on the Motion to consider entry of a Final Order

20 granting the relief requested in the Motion on a final basis; and

21   (8) grant such further relief as the Court deems just and proper.

22 Dated: July 26, 2023       WORKSITE LABS, INC.

23

24          By:___*/s/ David B. Golubchik*___
              DAVID B. GOLUBCHIK

25            ANTHONY A. FRIEDMAN

26            JOHN-PATRICK M. FRITZ
              LEVENE, NEALE, BENDER, YOO

27             & GOLUBCHIK L.L.P.
              Proposed Attorneys for Debtor and

28            Debtor in Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document **entitled Debtor's Emergency Motion For An Order: (1) Authorizing Debtor To (A) Obtain Postpetition Financing Pursuant To 11 U.S.C. § 364 And (B) Utilize Cash Collateral Of Prepetition Secured Entities Pursuant To 11 U.S.C. § 363; (2) Scheduling A Final Hearing; And (3) Granting Related Relief; Memorandum Of Points And Authorities In Support** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 26, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- David B Golubchik    dbg@lnbyg.com, stephanie@lnbyb.com
- Gregory Kent Jones (TR)    gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com
- Kelly L Morrison    kelly.l.morrison@usdoj.gov
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

**2.  SERVED BY UNITED STATES MAIL**: On **July 26, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| | | |
|---|---|---|
| The Honorable Vincent P. Zurzolo<br>United States Bankruptcy Court<br>Edward R. Roybal Federal Building<br>255 E. Temple Street, Suite 1360 / Courtroom 1368<br>Los Angeles, CA 90012 | | |

☐ *Service information continued on attached page*

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 26, 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

| | | |
|---|---|---|
| Chambers_VZurzolo@cacb.uscourts.gov | hwinsberg@phrd.com | mweiss@phrd.com |
| bharvey@buchalter.com | lgarner@phrd.com | sgubner@bg.law |

☐ *Service information continued on attached page*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 26, 2023 | J. Klassi | /s/ J. Klassi |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**

Worksite Labs, Inc.
20 Largest Creditors

McKesson Medical Surgical
9954 Maryland Dr
Ste 4000
Henrico, VA 23233

Orchard Software
701 Congressional Blvd
Ste 360
Carmel, IN 46032

Rapid Acceleration Partners, Inc.
2251 Longview Rd
Irving, TX 75063

Lumira DX
221 Crescent St
Watham, MA 02453

Siemens Healthcare Diagnostics
221 Gregson Dr
Cary, NC 27511

Medical Practice Partner LLC
PO Box 2877
Riverview, FL 33568-2877

Randstad Healthcare
3625 Cumberland Blvd
Suite 300
Atlanta. GA 30339

BairesDev
800 W. El Camino Real, Suite 180
Mountain View, CA 94040

American Express
P.O. Box 981535
El Paso, TX  75265-0448

SalesCatcher LLC
2133 W Chapman Ave
Suite L
Orange CA 92868

Abbott Laboratories Inc
PO Box 92679
Chicago, IL 60675-2679

Rebulld California Alliance
7722 Avalon Blvd
Los Angeles, CA 90003

Labcorp
PO Box 12140
Burlington, NC 27216

Dotted Line Collaborations
8000 Franklin Fanns Dr
Ste 100
Henrico VA 23229

Hanna Construction
1203 W Shelly Ct
Orange, CA 92868-1240

Beam & Associates
787 N Lincoln St
Orange CA 92867

Life Technologies Corporation
12088 Collections Center Drive
Chicago, IL 60693

Strategic Medical Properties, Inc
1810 S El Camino Real, Ste C
San Clemente, CA 92672

Greenberg Traurig
401 E Las Olas Blvd, Ste 2000
Ft Lauder dale, FL  33301

Reliance Law Group
10000 Washington Blvd, Flr 6
Culver City, CA 90232

First Republic Bank
111 PINE STREET
SAN FRANCISCO, CA 94111

First Republic Bank
C/O Agent For Service, Becky Degeorge
2710 Gateway Oaks Drive
Sacramento, Ca 95833

Bank Of Hawaii
130 Merchant Street
Honolulu, Hi 96813

Bank Of Hawaii
C/O Agent For Service, Jackson Yang
720 14th St
Sacramento, Ca 95814

LendSpark Corporation
2554 Gateway Road
Carlsbad, Ca 92009